UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MATTHEW C. MCKINNON,

    Plaintiff,

    v.

TERRY REDDEN,

    Defendant.

Case No. 3:21-CV-573 JD

## OPINION AND ORDER

Plaintiff Matthew McKinnon, proceeding pro se, sued Defendants Terry Redden, Michael Slaninka, Matthew Albright, Dennis Koen, Jamil Canteberry, and Moises Jimenez Lopez. He claims that on August 13, 2020, they used excessive force against him by repeatedly pepper-spraying him after he refused to apologize to a guard with whom he had a verbal altercation and then placing him in a hot shower. The case was tried before a jury in February 2026. After Mr. McKinnon finished examining all his witnesses, Defendants orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. The Court heard the parties' arguments and took the motion under advisement.

The jury returned verdicts in favor of each Defendant, except for Lt. Terry Redden, as to whom they could not reach a unanimous verdict. As a result, Defendants' motion under Rule 50 pertains only to Lt. Redden. *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012) (recognizing that a jury's verdict for the moving party moots the motion) (citing Advisory Committee Notes to Rule 50). Having reviewed the parties' arguments and considered the evidence introduced at trial, the Court will deny what is now effectively Lt. Redden's motion for judgment as a matter of law.

### A.  Standard of Review

Rule 50 "allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012) (citing Fed. R. Civ. P. 50(a)). "In considering a Rule 50 motion, a court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor." *Lasley v. Moss*, 500 F.3d 586, 590 (7th Cir. 2007). The Court does not make credibility determinations, nor will it reweigh the evidence. *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011).

### B.  Trial Evidence

As required, the Court construes trial evidence in the light most favorable to Mr. McKinnon. On August 13, 2020, in the midst of the COVID-19 pandemic, Mr. McKinnon was incarcerated at the Indiana State Prison and held a job as a barber. Around 2 p.m., he was told that his services were needed and he was brought to the D-cell house, a segregation unit. While waiting for further instructions, Mr. McKinnon became concerned about contracting the COVID-19 virus due to the presence of multiple prisoners without protective gear. As a result, he distanced himself from those prisoners until a female officer told him to return. Mr. McKinnon perceived the officer's command as crass and disrespectful and retorted back: "bitch, who you talking to?" (Trial Tr., DE 311 at 12.) Lt. Redden was nearby and witnessed the altercation. He stepped in, firing Mr. McKinnon from his barber position and accusing him of threatening an officer, which Mr. McKinnon denies ever having done. (Trial Tr., DE 311 at 12–13, 21, 46.)

2

Although in Mr. McKinnon's experience an offense of threatening an officer results in immediate placement in segregation, Lt. Redden directed another officer to escort Mr. McKinnon back to his cell in a different unit. (Trial Tr., DE 311 at 13.) What's more, for a period of time, his cell remained unlocked which, according to Mr. McKinnon, was inconsistent with any intention to transfer him to the segregation unit. (Trial Tr., DE 311 at 40.) Mr. McKinnon testified that he was placed in his cell so that Lt. Redden could retaliate against him by pepper-spraying him while he was defenseless. (Trial Tr., DE 311 at 13.)

Around 6 p.m., Lt. Redden and several of the other Defendants came to Mr. McKinnon's cell demanding that he apologize to the female officer. (Trial Tr., DE 311 at 14.) When Mr. McKinnon refused, they immediately began pepper-spraying him. (Trial Tr., DE 311 at 14–15.) Mr. McKinnon hid behind a hung sheet, placed a barber smock over his body, and threw liquids at them to protect himself. (Trial Tr., DE 311 at 14–15, 17–18.) In his words, he "was trying to stay alive." (Trial Tr., DE 311 at 18.) Mr. McKinnon testified that the guards continued spraying him for thirty minutes until he lost consciousness. (Trial Tr., DE 311 at 22.) He said that by the time they were done his TV had turned orange from all the pepper spray. (Trial Tr., DE 311 at 23.) Mr. McKinnon testified that Lt. Redden was the "ring leader" and the other guards were following his lead. (Trial Tr., DE 311 at 46.)

After he was taken out of his cell, Mr. McKinnon again lost consciousness and became limp. (Trial Tr., DE 315 at 20–21.) He was then escorted to the medical unit where, rather than being given a cold decontamination shower, he was placed—while still handcuffed behind his back and clothed—in a hot shower, which further aggravated his pain from the pepper spray. (Trial Tr., DE 311 at 26.) Lt. Redden was present at the shower. (Trial Tr., DE 315 at 28, 63.)

Although Lt. Redden filled out a disciplinary form for threatening, he didn't finish it, and Mr. McKinnon was never found guilty of the offense by the Disciplinary Hearing Board. (Trial Tr., DE 311 at 21; Trial Tr., DE 315 at 7–8.)

### C. Discussion

Lt. Redden argues that judgment as a matter of law is warranted in his favor because he and the other guards used force in a good-faith effort to restore order, not maliciously or sadistically to cause harm to Mr. McKinnon. Counsel made this argument orally once Mr. McKinnon finished examining his witnesses, but she did not cite specific evidence or explain in any detail what evidence was lacking, nor did she cite any similar cases.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Wantonness, the Supreme Court has explained, does not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Smith v. Kind*, 140 F.4th 359, 366 (7th Cir. 2025) (quotation marks and citation omitted for clarity). "[T]he Supreme Court has held that Eighth Amendment excessive force claims require a 'very high state of mind': a correctional officer's use of force only qualifies as 'unnecessary and wanton infliction of pain' if it is applied not 'in a good-faith effort to maintain or restore discipline,' but 'maliciously and sadistically to cause harm.'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). "What matters—and what will generally be the decisive factor in cases such as this—is the mindset of the individual applying the force." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force

was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

Of course, "[j]ails are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners." *Lewis*, 581 F.3d at 476. This means that the inmates must obey lawful orders:

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. . . . Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

*Id*. (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). "To compel compliance—especially in situations when officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted." *Potter v. Allmon*, No. 3:23-CV-39-DRL, 2023 WL 5929379, at *1 (N.D. Ind. Sept. 11, 2023) (citing *Lewis*, 581 F.3d at 477). "Of note, the use of pepper spray against an inmate under such circumstances does not constitute a per se violation of the Eighth Amendment." *Id*. (citing *Lewis*, 581 F.3d at 475–76, and *Soto*, 744 F.2d at 1271).

That said, "an inmate's passive disobedience, without more, does not in and of itself authorize unrestrained or extreme escalation of force. Instead, we consider an inmate's disobedience, along with the surrounding 'facts and circumstances,' to determine whether a particular use of force was necessary." *Kind,* 140 F.4th 359, 368 (7th Cir. 2025) (citing *Treats v. Morgan*, 308 F.3d 868, 872–73 (8th Cir. 2002) ("Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions."), and *Soto*, 744 F.2d at 1270).

When considering the evidence in the light most favorable to Mr. McKinnon, the Court cannot say that a reasonable jury would not have a legally sufficient evidentiary basis to find for Mr. McKinnon on the issue of whether Lt. Redden used excessive force against him in violation of the Eighth Amendment.

Mr. McKinnon testified that Lt. Redden sought to retaliate against him for the altercation that took place in the segregation unit, while Mr. McKinnon was waiting to cut hair. He said that Lt. Redden fired him from his barber position and falsely accused him of threatening an officer, as a pretext. But rather than placing him in segregation immediately—as is warranted for such an offense, if Mr. McKinnon is to be believed—Lt. Redden ordered that he be returned to his cell, where he would be defenseless against being pepper-sprayed four hours later. Curiously, Lt. Redden did not finish the disciplinary report regarding threatening and Mr. McKinnon was not convicted of any such offense.

According to Mr. McKinnon, he was attacked with pepper spray because he refused to apologize to the female officer. Even if Lt. Redden's order to apologize could be viewed as a lawful order, the force accompanying the order could be construed as unreasonable, given that Mr. McKinnon was not posing a risk to anyone while confined to his cell, and McKinnon contends that Lt. Redden made no efforts to limit the severity of the force. Lt. Redden himself testified that using profanity would not by itself authorize pepper-spraying an inmate (Trial Tr., DE 315 at 7), yet according to Mr. McKinnon, he was pepper-sprayed for thirty minutes until he lost consciousness because of how he spoke to the female guard four hours earlier. And once the officers retrieved him from his cell, rather than providing him with a cold decontamination shower, McKinnon contends that Lt. Redden subjected him to a hot shower while fully clothed and handcuffed behind his back, all of which exacerbated the degree of pain. These facts, if true,

6

do not absolve Mr. Redden from liability. On the contrary, they contradict his claims of acting in good faith and without any malicious intent to cause harm to Mr. McKinnon.

Although Lt. Redden suggests that lack of injury is an indicator that his actions were reasonable, "[a]s the Supreme Court has said, pain, not injury, is the barometer by which we measure claims of excessive force." Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Here, there's no question that Mr. McKinnon was pepper-sprayed and experienced significant pain. Likewise, while Lt. Redden maintains that he told Mr. McKinnon "to cuff up" so that he could be transferred to the segregation unit, and that he and the other officers applied pepper spray sparingly and only to gain Mr. McKinnon's compliance, McKinnon denies that assertion. Simply, the Court may not make credibility determinations. *Schandelmeier-Bartels*, 634 F.3d at 376.

### D.  Conclusion

For these reasons, the Court DENIES Lt. Redden's motion for judgment as a matter of law and REAFFIRMS the May 26, 2026, trial setting.

SO ORDERED.

ENTERED: April 17, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court

7